**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE NORDAM GROUP, INC., a ) | |
| Delaware Corporation, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No.  04-CV-0512-CVE-FHM |
| ) | |
| FLIGHT ENVIRONMENTS, INC., a ) | |
| California Corporation, ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Now before the Court is the Motion to Dismiss (Dkt. # 12) filed by plaintiff The NORDAM Group, Inc. ("NORDAM").  NORDAM initially sought partial dismissal of certain counterclaims alleged by defendant, Flight Environments, Inc. ("FEI").  The Honorable H. Dale Cook converted the motion to a motion for summary judgment, and the parties were directed to file additional documentation and to address an additional issue.  The case was reassigned to the undersigned on June 21, 2005.

NORDAM filed this action alleging two claims:  one for breach of contract and another for declaratory relief.  Although the legal theories underlying FEI's counterclaims are not entirely clear, it appears from subsequent documents that FEI has counterclaimed for (I) breach of contract; (II) anticipatory breach of contract; (III) fraud or  breach of the implied covenant of good faith and fair dealing; (IV) interference with economic relations; (V) unjust enrichment; (VI) contract reformation; (VII) quantum meruit.[1]  NORDAM seeks partial summary judgment as to counts III through VII.

---

[1]     FEI asserts in the Supplemental Joint Status Report (Dkt. # 41) that is has alleged eight counterclaims, but this appears to be an error.

**I.**

The undisputed facts are that NORDAM and FEI executed a "Purchasing Agreement" on August 23, 2000, whereby FEI agreed to provide thermal and acoustical insulation products for business jet aircraft. NORDAM intended to supply FEI "kits" or "shipsets,"[2] to Empresa Brasileira de Aeronáutica S/A ("Embraer") as part of NORDAM's interior packages for Embraer's "Legacy" aircraft. NORDAM paid for 15 shipsets from FEI, but discontinued the orders after Embraer decided to "de-content" its purchases of interior packages from NORDAM. This meant that Embraer would discontinue purchases from NORDAM of those portions of the interior packages which were not actually manufactured by NORDAM, including the acoustical insulation kits manufactured by FEI.

Embraer later informed NORDAM that the FEI kits did not meet the noise requirements for the Legacy aircraft. The noise requirements were those that had been incorporated into the Purchasing Agreement. NORDAM discontinued its orders for FEI insulation and Embraer obtained its acoustical insulation for the Legacy aircraft from another supplier. FEI and Embraer discussed the possibility of FEI supplying insulation directly to Embraer, but FEI was not successful in securing such a contract with Embraer.

Paragraph 3 of the Purchasing Agreement incorporates a copy of NORDAM's Standard Terms and Conditions (attached as the last two pages of the Purchasing Agreement.) Supp. Br., Dkt. # 32, Ogden Declaration, Ex. A, ¶ 3 at 2. The last sentence of section 20 of the Standard Terms and

---

[2]   "Shipset" is an industry term for the quantity of a particular component required to equip one aircraft.

2

Conditions states that: "The laws of the state shown in Buyer's address, printed on the face of this order, shall apply in the construction hereof." NORDAM is the Buyer under the Purchasing Agreement, and its address on page one of the Purchasing Agreement is in Oklahoma. Section 8 of NORDAM's Standard Terms and Conditions gives NORDAM as Buyer the right to terminate "Without Cause" by giving written notice.

The Purchasing Agreement provides, in relevant part: "**Forecasted Delivery Schedule:** 8-10 ship-set kits required in 2001 with a total of 120 ship-set kits to be completed through the end of 2009. (approximately 14 - 15 ship-sets per year)." Id. ¶ 6 at 3. It also provides, in relevant part:

> **NORDAM'S Guarantee:** Pending the final agreement of the Master contract (LTA) between Embraer and The NORDAM Group, NORDAM guarantees to the Supplier that it will purchase 25 (twenty-five) acoustical/insulations system kits of any of the four floor-plan, during the period of 3 (three) years beginning with the 1st aircraft delivery date and not exceeding 4 (four) years from the date of execution by the Parties of the Embraer Master Contact. This guarantee will remain in effect as long as the Supplier's performance (quality and delivery) are acceptable to The NORDAM Group. Acceptable performance means meeting the terms and conditions of the Contract.

Id., ¶ 9, at 3-4. The parties dispute whether the Purchasing Agreement obligated NORDAM to purchase 120 shipsets, as opposed to the "guaranteed" 25 shipsets of thermal and acoustical insulation required by the contract. To the extent FEI is requesting that the Court reform the contract, the Court will address this issue as part of the counterclaim for contract reformation. To the extent NORDAM is seeking a ruling on the damages available to FEI for NORDAM's alleged breach of the contract, that issue was not part of the original motion to dismiss, and the Court will not address it at this stage of the proceedings. For the same reason, the Court will not address NORDAM's supplemental argument that damages claimed by FEI for other lost profits and business

are too speculative and must be dismissed. Nonetheless, NORDAM is not precluded it from raising these arguments in an appropriate motion for summary judgment at the close of discovery.

The parties also dispute whether FEI's products met the noise requirements of their contractual arrangement. FEI claims that the interior components, which included the FEI insulation products, supplied by NORDAM to Embraer were heavier than Embraer wanted, and this "weight crisis," not the noise problem, led to Embraer's decision to "de-content" purchasing for the interior components of its aircraft. FEI also challenges the tests that were performed by Embraer, and FEI claims that it was never given the opportunity to address and correct the noise problems or to develop a lighter weight model for its insulation. Finally, FEI claims that there is a dispute as to NORDAM's demand for use of FEI's proprietary information. However, these disputed facts, as well as others, are material to the breach of contract and anticipated breach of contract claims of NORDAM and FEI – not to the five counterclaims of of FEI for which NORDAM initially sought dismissal.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

As an initial matter, the parties have briefed whether Oklahoma or California law governs this dispute under the Purchasing Agreement. While the law as it relates to this dispute appears to be the same in either state, the Court finds that Oklahoma law controls. "A federal trial court sitting in diversity jurisdiction must apply the choice of law rules of the forum state-here, Oklahoma." Mauldin v. WorldCom, Inc., 263 F.3d 1205, 1211 (10th Cir. 2001). Since the Purchasing Agreement is a contract for the sale of goods, it is governed by the Uniform Commercial Code, which has been adopted in Oklahoma. Thus, the parties may agree on a choice of law provision as long as the chosen state bears a "reasonable relation" to the transaction. See Act of May 5, 2005,

5

ch. 139, § 14 (H.B. 2028), 2005 Okla. Sess. Law Serv. 573, 585 (West) (to be codified at Okla. Stat. tit. 12A, §1-301).[3]

As set forth above, the Purchasing Agreement incorporated NORDAM's Standard Terms and Conditions, which provide that the laws of the state shown by the buyer's address apply in the construction of the agreement. There is no dispute that NORDAM is the buyer and that NORDAM's address is in Oklahoma. There is no question that Oklahoma bears a reasonable relation to the transaction. Oklahoma law applies to the Purchasing Agreement.[4]

**IV.**

The third counterclaim, and the first one for which NORDAM seeks summary judgment, pertains to NORDAM's bad faith breach of contract. FEI claims that NORDAM breached an implied covenant of good faith and fair dealing by reference to NORDAM's contract with Embraer. In particular, FEI alleges that NORDAM breached its contract with Embraer when NORDAM delivered a completed interior that weighed more than the specified or global overall weight permitted by the NORDAM-Embraer contract. FEI further argues that the testing by Embraer was not performed on a completed aircraft, but, in any event, FEI was not permitted to develop and install a revised lightweight system. FEI also charges that NORDAM's surcharge on FEI's shipsets led Embraer to de-content, which, in turn, led NORDAM to cease ordering shipsets from FEI.

---

[3] The law in effect when the parties briefed the issue, Okla. Stat. tit. 12A, § 1-105(1), was officially repealed in 2005, but the language of the "new law" to be codified at Okla. Stat. tit. 12A § 1-301(1) is identical.

[4] A separate confidentiality agreement executed by the parties may be subject to California law, but that agreement is not the subject of the motion at issue here.

Essentially, FEI believes that NORDAM had a "duty to protect FEI's contract rights" when NORDAM did business with Embraer. Resp. Br. Dkt. # 16, at 2.

No such duty is implied in the circumstances of this case. Oklahoma does not recognize the tort of bad faith breach of contract in a commercial contract. See First Nat'l Bank and Trust of Vinita v. Kissee, 859 P.2d 502, 509 (Okla. 1993) (citing Rodgers v. Tecumseh Bank, 756 P.2d 1223, 1226 (Okla. 1998)); Bankers Trust Co. v. Brown, 107 P.3d 609, 614 (Okla. Civ. App. 2004). Indeed, Oklahoma has not extended tort liability for bad faith breach of contract beyond cases involving insurance contracts. See, e.g., RJB Gas Pipeline Co. v. Colorado Interstate Gas Co., 813 P.2d 1, 12 (Okla. Ct. App. 1989). If it did, as the RJB court reasoned, "virtually every breach of contract action governed by Oklahoma law would be 'fair game' for a punitive damage prayer." Id. NORDAM is entitled to summary judgment on FEI's third counterclaim.[5]

**V.**

In FEI's fourth counterclaim, it is not clear whether FEI is claiming tortious interference with a contractual relationship or interference with a prospective economic advantage. The two are not synonymous. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 150 n. 96 (Okla. 1998); Brock v. Thompson, 948 P.2d 279, 293 n. 58. (Okla. 1997); Overbeck v. Quaker Life Ins. Co., 757 P.2d 846, 847- 48 (Okla. Ct. App. 1984) ("Although both torts do have similarities, the underlying theories of liability differ. Interference with a prospective economic advantage usually involves

---

[5] NORDAM initially argued that, to the extent FEI's third counterclaim contained allegations of fraudulent acts by NORDAM, FEI had not pled fraud with the particularity required under Fed. R. Civ. P. 9(b) and had not alleged reliance. In response, FEI consented to the deletion of references to tort, fraud and bad faith breach in the third counterclaim and agreed that it pertained solely to a contract breach of the implied covenant of good faith and fair dealing. Accordingly, the Court finds that FEI has no fraud claim against NORDAM for the acts alleged in the Complaint.

7

interference with some type of reasonable expectation of profit, whereas interference with a contractual relationship results in loss of a property right."). To recover in an action for tortious interference with contract or business relations a plaintiff must show that: (1) "he or she had a business or contractual right that was interfered with"; (2) "the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable"; and (3) "damage was proximately sustained as a result of the interference." Daniels v. Union Baptist Ass'n, 55 P.3d 1012, 1015 (Okla. 2001) (quoting Mac Adjustment, Inc. v. Property Loss Research Bureau, 595 P.2d 427, 428 (Okla. 1979)). By comparison, "[t]he essential elements of a claim for intentional interference with prospective economic advantage are 'the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.'" Boyle Servs., Inc. v. Dewberry Design Group, Inc., 24 P.3d 878, 880 (Okla. Civ. App. 2001) (citations omitted).

FEI cannot recover for tortious interference with contract or business relations because (1) FEI had no business or contractual right with Embraer with which NORDAM could interfere, and (2) a party to a contract cannot tortiously interfere with its own contract or business relationship. Navistart Intern. Trans. Corp. v. Vernon Klein Truck & Equip., 919 P.2d 443, 446-47 (Okla. Ct. App. 1994) (citing Schonwald et al. v. Ragains, 122 P. 203, 209 (Okla. 1912)). A claim for tortious interference with a contract or business relationship is properly pled only if it alleges that a third party induced one of the parties to the contract to breach its agreement. Gabler v. Holder and Smith, Inc., 11 P.3d 1269, 1278 (Okla. Civ. App. 2000). Thus, to the extent the fourth counterclaim is that

8

NORDAM tortiously interfered with its own contractual relationship with FEI, NORDAM is entitled to summary judgment.

If FEI is claiming that NORDAM interfered with FEI's prospective economic advantage in forming a contractual relationship with Embraer, the undisputed facts mandate summary judgment for NORDAM. The evidence, including an affidavit by Joe Ogden of NORDAM and supporting documentation, show that FEI representatives had numerous direct contacts with Embraer concerning the possible supply by FEI to Embraer of acoustical insulation for the Legacy aircraft. Supp. Br., Dkt. # 32, Ogden Decl., ¶ 19 and Ex. C., at 1-2. Further, NORDAM alleged, and FEI did not dispute, that all of the companies other than FEI whose products for the interior of the Legacy aircraft were de-contented by Embraer subsequently entered into agreements with Embraer whereby Embraer purchased the de-contented products directly from them. Id. at ¶ 20.

FEI states that NORDAM refused to permit FEI to deal directly with Embraer after FEI learned that NORDAM was charging Embraer a significant markup on FEI's shipsets to Embraer. See Mem. in Opp., Dkt. # 28, at 24; Reply to Supp., Dkt. # 33, at 8. However, FEI submitted no evidence in support of this claim other than a declaration by FEI's president and CEO Eamon Halpin citing to a memorandum that does not support that claim. Halpin Decl., Dkt. # 30, at 9-10. Halpin sent a request on June 7, 2002 for NORDAM's permission to send a quote directly to Embraer, and Joe Ogden of NORDAM responded on June 12, 2002: "As best I can tell, there is nothing in our contract that precludes you from sending a quote to Embraer." Reply to Memorandum in Opposition to Motion for Partial Summary Judgment, Dkt. # 34, Ex. A.[6] Thus, Halpin's conclusory statement

---

[6] The memorandum was not attached to the declaration, but NORDAM provided the document in its reply.

does not create a genuine issue of material fact, especially when the document he references does not support his statement. See Bancoklahoma Mortgage Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1101 (10th Cir. 1999) ("broad conclusory statements," that contained "no specifics as to person, dates, transactions, or amounts" lacked "rudimentary elements for admissibility" needed to oppose a motion for summary judgment).  FEI cannot meet an essential element of FEI's interference claim, i.e., that NORDAM interfered with FEI's efforts to sell to Embraer.  NORDAM is entitled to summary judgment on FEI's fourth counterclaim.

**VI.**

The allegations of the fifth and seventh counterclaims, unjust enrichment and quantum meruit, are similar, and neither claim is viable because there is an express contract between the parties.  FEI specifically alleges, in the fifth counterclaim, that "NORDAM was unjustly enriched by virtue of the expertise provided by FEI in providing quiet aircraft interiors and by NORDAM's excessive charges for FEI's shipsets . . . " pursuant to the contract between NORDAM and FEI.  Answer, Counterclaims and Cross-claims, Dkt. # 8, at 31, ¶ 113.[7]  A claim for unjust enrichment is based on an implied promise.  American Automated Theatres, Inc. v. Hudgins, Thompson, Ball & Assocs., Inc., 516 P.2d 565, 567-68 (Okla. Ct. App. 1973).  It exists where an express contract is unenforceable.  Id.  Thus, where an express contract exists between the parties, a claim for unjust

---

[7] The counterclaim also contains allegations that relate to FEI's claim that it had a reasonable contract expectation to deliver 120 shipsets.  Such allegations are duplicative of allegations in count VII for contract reformation and will not be addressed here.  FEI requests declaratory relief in this counterclaim, and subsequent to the pleadings on the motion to dismiss, FEI recharacterizes this claim as one for declaratory relief.  See Joint Status Report, Dkt. # 41, at 12.  However, as FEI's Memorandum in Opposition to Motion for Partial Summary Judgment (Dkt. # 28, at 18-19) continues to characterize it as a claim for unjust enrichment, the Court addresses it as such.

10

enrichment is precluded unless the contract has been abrogated, rescinded, or abandoned. Id. at 568. There is no allegation that the Purchasing Agreement is unenforceable or that it has been abrogated, rescinded, or abandoned.

Similarly, the theory of "quantum meruit applies only where there is no express contract." Brown v. Wrightsman, 51 P.2d 761, 763 (Okla. 1935). Indeed, the purpose of quantum meruit is to ensure that the law will imply an agreement to pay a person who "performs services without a written contract." Id. Quantum meruit is "a legal action grounded on a promise that the defendant would pay to the plaintiff [for his services] as much as he should *deserve*." Martin v. Buckman, 883 P.2d 185, 193-94 (Okla. Ct. App. 1994) (footnote and citations omitted; brackets and emphasis in original).

FEI does not allege that NORDAM failed to pay for services performed by FEI outside the express agreement between the parties. Instead, FEI alleges that it was not able to perform services because the terms of the express agreement were allegedly breached by NORDAM. In particular, FEI alleges that it has an action for quantum meruit because FEI and NORDAM would have entered a future contract and FEI would have received a future economic benefit if NORDAM had performed in good faith under the Purchasing Agreement. Answer, Counterclaims and Cross-Claims, Dkt. # 8, at 37, ¶ 142. A party suing under an express contract cannot recover on quantum meruit. See Oklahoma Nat. Gas Co. v. Herren, 195 P. 2d 278, 279-80 (Okla. 1948). Accordingly, NORDAM is entitled to summary judgment on FEI's fifth and seventh counterclaims.

## VII.

FEI's sixth counterclaim is for reformation of the Purchasing Agreement. Relying on paragraph 6 of the agreement, FEI asserts throughout its pleadings that the agreement calls for FEI to deliver a total of 120 shipset kits to NORDAM through the end of 2009 once all of the contract terms have been met. More specifically, FEI argues that, after the successful delivery of the guaranteed 25 shipsets provided for by paragraph 9 of the agreement, "the parties intended to amend and reform the agreement to provide a continuing assurance of the right to deliver 120 shipsets," and FEI relied on this assurance in accepting the contract. Resp. Dkt. # 16, at 6; Memo. in Opp to Mot. for Partial Summ. Judg., Dkt. # 28, at 20. FEI states that its reasonable, anticipated contract expectation was to conclude the contract to 2009 under paragraph 6. Memo. in Opp., Dkt. # 28, at 19.

Reformation is an equitable remedy which a court will exercise when the words of a written contract do not correctly express the meaning upon which the parties agreed. Thompson v. Coffield, 894 P.2d 1065, 1067 (Okla. 1995). Reformation is not allowed unless there is (a) fraud, (b) mutual mistake, or (c) mistake by one party and inequitable conduct by the other, either of which results in a contract which does not reflect what either party intended. Id. at 1067-68. FEI has not alleged that the Purchasing Agreement does not correctly express the intent of the parties. Instead, FEI seeks reformation based on alleged acts of NORDAM which occurred after the agreement was signed. FEI has failed also to allege that there was fraud or mutual mistake that resulted in the Purchasing Agreement not reflecting what the parties intended. Nor has FEI alleged that its own mistake, combined with alleged inequitable conduct by NORDAM, had such a result. NORDAM is entitled to summary judgment on FEI's sixth counterclaim.

## VIII.

This is a contract action; accordingly, FEI has no claim for punitive damages. NORDAM's Motion to Dismiss (Dkt. #12), converted by the Court to a motion for summary judgment, is hereby **GRANTED**. NORDAM is entitled to judgment as a matter of law on FEI's third, fourth, fifth, sixth, and seventh counterclaims.

**IT IS SO ORDERED** this 16th day of September, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT